```
          UNITED STATES DISTRICT COURT
          EASTERN DISTRICT OF NEW YORK

---------------------------------X Docket#
LIHUA GAN et al.,                : 24-cv-4234-RER-JAM
                                 :
              Plaintiffs,        :
                                 :
      - versus -                 : U.S. Courthouse
                                 : Brooklyn, New York
GSUIG REAL ESTATE MEMBER LLC et al.:
                                 : August 22, 2024
              Defendants         : 9:30 a.m.
---------------------------------X
```

     TRANSCRIPT OF CIVIL CAUSE FOR PRE-MOTION CONFERENCE
          BEFORE THE HONORABLE JOSEPH A. MARUTOLLO
               UNITED STATES MAGISTRATE JUDGE

**A   P   P   E   A   R   A   N   C   E   S:**


**For the Plaintiff**:         **Matthew J. Livingston, Esq.**
                               Reid & Wise LLC
                               1 Penn Plaza, Suite 2015
                               New York, NY 10119


**For the Defendants**:        **John J. Kuster, Esq.**
                               **Gregory Wang, Esq.**
                               Sidley Austin LLP
                               787 Seventh Avenue
                               New York, NY 10019

                               **Michelle A. Klein, Esq.**
                               Rivkin Radler LLP
                               926 RXR Plaza
                               Uniondale, NY 11556


          (Appearances continue on next page)


**Transcription Service**:     **Transcriptions Plus II, Inc.**
                               61 Beatrice Avenue
                               West Islip, New York 11795
                               RL.Transcriptions2@gmail.com


Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

2

**APPEARANCES CONTINUED**

<u>**For the Defendants**</u>:          **Joseph B. Schmit, Esq.**
                              Phillips Lytle LLP
                              620 8th Avenue, 38th Floor
                              New York, NY 10018

                              **Andrew V. Achiron, Esq.**
                              **Milan S. Patel, Esq.**
                              Silverman Shin & Schneider PLLC
                              Wall Street Plaza
                              88 Pine Street, 22nd Floor
                              New York, NY 10005

3

Proceedings

1    THE CLERK:  Docket number 24-cv-4234, *Gan v.*

2  *GSUIG Real Estate Member LLC*.

3    Will the parties please state their appearances

4  for the record starting with plaintiff.

5    MR. LIVINGSTON:  Hi, your Honor.  Matthew

6  Livingston; Reid & Wise LLC on behalf of plaintiffs.

7    MS. KLEIN:  Michelle Klein; Rivkin Radler LLP

8  appearing on behalf of Webster Bank, N.A.

9    MR. KUSTER:  Good morning, your Honor.  John

10 Kuster and Greg Wang from Sidley Austin LLP representing

11 defendant GSUIG Real Estate Member LLC.

12    MR. SCHMIT:  Good morning, your Honor.  Joe

13 Schmit from Phillips Lytle representing defendant Empire

14 Outlet Management LLC.

15    MR. ACHIRON:  Good morning, your Honor.  Andrew

16 Achiron and Milan Patel from Silverman Shin & Schneider

17 PLLC on behalf of defendant BFC Partners LLC.

18    THE COURT:  Okay.  Great.  Just one moment,

19 please.  Good morning, everyone.  I'd just ask, Esther,

20 can somebody just close the door in the back?

21    THE CLERK:  Yes.

22    THE COURT:  Hang on just one second.

23    (Pause in proceedings)

24    THE COURT:  Okay.  So good morning again,

25 everyone.  First, apologies for the lack of table space

4

Proceedings

1    in this courtroom.  I appreciate everyone's willingness

2    to work around that.

3           So first, just as a procedural matter, so the

4    parties have consented to a magistrate judge here,

5    myself, ruling on this dispositive motion.  I did want to

6    just address if there are any questions.  I realize Judge

7    Reyes referred it to me to consent to my jurisdiction to

8    decide the proposed motion but realistically I'm not sure

9    what the benefit is of consenting only on the motion

10   rather than consenting on the whole case given that

11   realistically my understanding would be that, you know, I

12   would rule on the dispositive motion and it would not be

13   a report and recommendation in this scenario.  So you

14   could appeal that regardless, right?  So you know, the

15   adverse ruling was against you.

16          So has there been any discussion or any thought

17   about just consenting to the entire case or any questions

18   about that?

19          MR. LIVINGSTON:  Your Honor, yeah.  Matthew

20   Livingston for the plaintiffs here.

21          We would consent, I believe I can represent we

22   would consent to the entire case.  I think GSUIG and

23   Sidley originally had moved to have the district judge

24   decide this so, you know, I obviously can't represent

25   their position, but I think plaintiffs would consent to

5

Proceedings

1   your jurisdiction and to decide the case.

2          THE COURT:  And just to be clear, I don't need

3   to know anyone's position on this and there's obviously

4   nothing negative if you don't consent entirely.  I was

5   just more curious than anything because again, it would

6   seem that if you're consenting for the dispositive motion

7   and if I rule and grant the motion to dismiss, for

8   instance, you know, the plaintiff, if it would like,

9   would appeal that decision.

10          And frankly, if there needs to be a settlement

11   conference and there's concern about the magistrate judge

12   handling the settlement conference while also handling

13   the dispositive motion, we can have another magistrate

14   judge assigned just for purposes of the settlement

15   conference, or frankly I could do it myself as well since

16   I don't think there would be a bench trial down the road

17   here.

18          So I don't know if -- you know, it sounds like

19   plaintiff is fine with it.  I'm not going to ask the

20   defendants now each if you consent.  But has there been

21   any discussion on the defendants' side or any questions

22   on the defendants' side on this?

23          MR. KUSTER:  John Kuster for Sidley for GSUIG.

24   No.  I don't think we've had a discussion per se.  We had

25   an exchange of emails about whether to consent to your

6

Proceedings

1   Honor hearing this motion and deciding it.  We haven't

2   gone back and looked at the underlying question of

3   whether the whole case should be referred to your Honor

4   or tried before you.

5        THE COURT:  All right.

6        MR. KUSTER:  So we can go back and confer with

7   our clients about that.

8        THE COURT:  Sure.  So what I'll do is then in

9   the minute entry I'll just ask kind of similar to Judge

10  Reyes's order just to meet and confer among the parties

11  and then you can let me know one way or another.  I'll

12  set a deadline.  Let's say next Thursday, the 29th.  And

13  if you do consent, it's basically the same form you fill

14  out, but it would just be clear that -- if you want to do

15  a cover letter on top that you're consenting to the

16  jurisdiction of the entire case rather than just the

17  motion.

18        Okay.  So with that being said, I just want to

19  get that procedural piece out of the way.

20        I also reviewed the plaintiff's letter

21  yesterday seeking an adjournment and while normally I'm

22  fine with granting adjournments as requested, I just

23  thought it would make sense just to have everybody here

24  together to address this.

25        First, let me just ask the Empire Outlet

7

Proceedings

1  Management what's the basis for the anticipated motion to

2  dismiss for EOM?  I'm sorry.

3          MR. SCHMIT:  Your Honor, Joe Schmit.  That's

4  fine.

5          THE COURT:  And also, this is being recorded on

6  our FTR system, so given the number of attorneys, if you

7  could just identify yourself each time you speak just in

8  case anyone needs a transcript of this as well.

9          MR. SCHMIT:  Certainly.  Generally speaking,

10 you know, it follows the outline by the other defendants,

11 but we're obviously the one that was accused of or

12 alleged, allegedly breached the fiduciary duty and the

13 contract.

14          Based on the expressed language of the contract

15 which is appended to the complaint, we acted according to

16 exactly what the parties agreed to.  We were authorized

17 to invest the assets that needed to be at risk.  We did

18 what we needed to do.  And I think when you look at the

19 whole picture as it was expressed by the other

20 defendant's letter, if we had not taken the action that

21 supposedly was this breach of fiduciary duty or the

22 contract, the entire investment would have gone down the

23 drain a whole lot earlier and brought more damage to the

24 EB-5 lenders.

25          So that's generally speaking that we acted in

8

Proceedings

1    accordance with the expressed agreement, it's appended,

2    and it can be interpreted as a matter of law and from

3    that follows that all these claims should be dismissed.

4    And once we're out of it, obviously the other defendants

5    who are accused of tortious interference and aiding and

6    abetting as night follows day would also be out of the

7    case.

8            THE COURT:  And just so I understand it

9    procedurally, what was the reason for not yet filing the

10   motion for a pre-motion conference?

11           MR. SCHMIT:  Our response isn't due until

12   September 30th.

13           THE COURT:  Okay.  So --

14           MR. SCHMIT:  We just got late to the dance

15   essentially.

16           THE COURT:  What I'd like to do is basically

17   have that pre-motion conference now with respect to your

18   motion.  But I do agree with plaintiff 's point that I'd

19   like there to be one deadline for the motions.  I did

20   want to talk through with defendants in a moment just

21   logistically how this will work, if there'll be one

22   motion, if there'll be multiple briefs that are filed in

23   the same day.

24           But before I get there, let me ask plaintiff

25   based on the letters, the pre-motion conference letters

Transcriptions Plus II, Inc.

9

Proceedings

1   that have been filed and the arguments that have been

2   raised, are you intending to amend the complaint?

3         MR. LIVINGSTON:  Yeah, and we discussed this

4   with all defendants' counsel this morning.  I think our

5   proposal, and if it's amenable to the Court, would be

6   that the defendant EOM gets their letter motion on file

7   which again, there are separate causes of action against

8   EOM, defendant EOM, but we think it will largely, you

9   know, kind of follow the similar arguments of the other

10  three defendants.  Once that's on file, we would amend

11  our complaint and we would consent to that, either if you

12  want us to file for leave to amend the complaint or as of

13  right, assuming that kind of 21 day Rule 15 clock would

14  tick from when they file their letter motion.  And then

15  we would amend the complaint to address any alleged

16  deficiencies with respect to these letter motions say

17  within seven days or, you know, some reasonable timeline

18  that's relatively quick.

19        Again, there's not -- we've consented.  I think

20  our intention was always to treat all defendants

21  procedurally identically, right?  And they got late

22  service allegedly we agreed and executed a waiver of the

23  service of summons which is why they're on a different

24  timeline, right?  But our goal was always to get them all

25  on the same timeline.  So that was a service issue we

10

Proceedings

1  didn't want to involve the Court with.

2         So our goal would be we amend the complaint to

3  address any perceived deficiencies.  Then they can file

4  full 12(b) motions to dismiss and then we would have full

5  briefing to respond to those motions to dismiss.  And

6  then obviously we would consent to your jurisdiction to

7  decide that.

8         And then if the complaint or certain causes of

9  action against certain defendants obviously survive the

10 motion to dismiss, then we proceed to discovery and that

11 is -- you know, we didn't consent to no discovery after

12 that stage obviously.

13        So we think there is critical, given the

14 alleged did conspiracy claims here -- and I don't think

15 we need to get into whether conspiracy is an independent

16 cause of action, but our central argument with this case

17 is that sure, the EB-5 investors invested, had to put

18 their money at risk, right, with this project.  It's an

19 outlet mall on Staten Island.

20        What happened though is that, you know, circa

21 2019 our allegation that we think we pleaded sufficient

22 facts in the complaint to satisfy Rule 8 and Iqbal

23 Twombly are that these four defendants were communicating

24 with each other, they've been involved since 2014.  They

25 were intimately involved all four with the financing of

11

Proceedings

1   the project, right?

2           And they, to our detriment, essentially created

3   a heads I win, tails you lose situation where no matter

4   what the EB-5 was going to lose, and these defendants

5   were going to get every drop of value out of this project

6   that was available.

7           Of course they might argue we still lost, we

8   net lost money.  But our view is that's not relevant.  It

9   doesn't matter if you net lost money.  It matters if we

10  should have recovered some value that you otherwise

11  improperly extracted from the project.  So that's just a

12  high level view of our view of the case.

13          But I think procedurally and probably all we

14  necessarily need to get into today is we will amend our

15  complaint subject to our right to amend the complaint to

16  address the alleged deficiencies in their letter motions.

17  Then they can answer or they can file their full 12(b)(6)

18  motions to dismiss.  We would be able to respond to those

19  on a reasonable timeline and then consent to your

20  jurisdiction and go from there.  So --

21          THE COURT:  Given the representation made by

22  EOM today, is there a need to actually see their letter

23  before amending your complaint?

24          MR. LIVINGSTON:  I mean the only issue is that

25  they have independent causes of action for the direct

12

Proceedings

1   alleged breach of fiduciary duty, right?  So the aiding

2   and -- I think the fact pattern is probably similar but I

3   don't see a reason why it should take them that much time

4   to file that letter motion.

5          THE COURT:  Well, I appreciate that.  I mean I

6   also appreciate they have -- you know, their deadline

7   hasn't expired yet to respond.

8          MR. LIVINGSTON:  Yeah.

9          THE COURT:  Let me hear from EOM though.  I

10  mean in terms of actually just moving this along, if you

11  end up -- when is the earliest you can file that letter

12  motion just so that -- again, what I'd like to avoid here

13  is unnecessary costs and wasting everyone's time.  So I

14  don't want a situation in which it's basically ripe now

15  for the plaintiff to amend the complaint, they amend the

16  complaint, set a briefing schedule, and then EOM raises

17  something in the pre-motion letter that requires a second

18  amended complaint for whatever reason which I would

19  likely, you know, give him an opportunity to do that, and

20  then everything is then delayed or motions or briefing

21  has to be rewritten.

22         So let me ask EOM what's the earliest you think

23  you can get a letter motion on file?

24         MR. SCHMIT:  Certainly in two weeks, within two

25  weeks.

13

Proceedings

1          THE COURT:  Okay.  So let's say EOM should

2   respond to the complaint by September 5th, two weeks from

3   today.  And if that's -- let's just put it this way.  I

4   think you should just describe your anticipated motion.

5   You know, we don't have to have another pre-motion

6   conference.  We're not going to waste time with

7   everything.

8          MR. SCHMIT:  That's what I said.

9          THE COURT:  But I think it's helpful just to

10  have that letter out there.  Then I'll say by a week

11  later, September 12th, plaintiff should file an amended

12  complaint.  I'm assuming that even with the amended

13  complaint the defendants are not going to answer, right?

14  Unless something drastically changes.  I'm going to set a

15  deadline then for defendants to file their motion in

16  response to the amended complaint.

17          So that then brings me to this other logistical

18  piece and I'm not sure who wants to speak on this first.

19  But how do the defendants anticipate responding here?  Is

20  there a thought about having one large brief that I would

21  allow for extended pages and the like?  Or are the

22  parties thinking that the issues are that they require

23  separate briefing?  Have any thoughts?

24          MR. KUSTER:  Your Honor, it's John Kuster for

25  GSUIG.  I think there is a lot of overlap in our

14

Proceedings

1    positions obviously with the same allegations arising

2    against each of our clients, but there are independent

3    reasons why we have bases for dismissal.  And as EOM's

4    counsel suggested, there's specific claims just against

5    them.  And so while there's overlap, there's also not

6    overlap.

7            So I think what might be good for the

8    defendants to get together and see what might be most

9    efficient for your Honor to do.  It may be that we have

10   an omnibus brief that addresses the overlap and then each

11   defendant has a supplemental brief that they address

12   unique issues to each.  I don't know.  But we'd have to

13   go back to our client and obviously consult one another

14   on that.

15           Otherwise, I think the only way to do it is for

16   each of us to file our own motions.  I think the

17   defendants are prepared to obviously file in tandem now

18   so there would be no separate schedule for any

19   independent defendant.

20           THE COURT:  Other thoughts from any of the

21   other defendants?

22           MR. SCHMIT:  Yeah, I mean other than to kind of

23   echo that EOM is going to have to make some independent

24   arguments.  I think that's pretty obvious.  But whether

25   we can argue some of the facts or put them in a joint

15

Proceedings

1  brief before we do that might be helpful, but we have to

2  see.

3          THE COURT:  All right.  Are there any other

4  thoughts?

5          Okay.  So this is what I'll do then.  I'm going

6  to say by September 19th I'm going to order the

7  defendants just to file a status report and that would be

8  a joint letter, it could be very brief, indicating

9  whether or not the defendants plan to file a single

10  omnibus brief or an omnibus brief in some supplemental

11  briefing, or for that matter separate briefs all around,

12  and if so, proposed page limits for that brief.

13          And in that same letter, I ask the defendants

14  to then propose a briefing schedule and in that briefing

15  schedule that would allow for a deadline for the motion,

16  for the briefs, but also for the plaintiff's opposition

17  and then the reply brief.  I think this should be a

18  jointly submitted letter from the defendants but I would

19  want the plaintiff's consent at least for the schedule

20  and for page limitations.  So for instance, if you want

21  an omnibus brief of 50 pages, you know, then I would

22  obviously give 50 pages to the other side as well, but I

23  would just want that to be worked out between the

24  parties.

25          I would add that I think there is a lot of

16

Proceedings

1  benefit from having a single brief.  I mean I think from

2  costs alone there may be some benefit.  But I'm fine with

3  a single brief and then portions of the brief, even if it

4  means additional pages that address a single defendant's

5  issue.  You know, point 8 is X defendant's issue and then

6  addressing it just to make it as clean as possible on the

7  docket.

8         I also just would note I would not, at least at

9  this stage, not plan on scheduling another conference.  I

10 would likely just approve the schedule that's set by the

11 parties assuming it's in a reasonable time frame.  But

12 also I would add, you know, if it's helpful I'm happy to

13 hold another conference if there are issues that come up.

14 So again, I'll put that in a minute entry.

15        Before though we end for today, you know, I do

16 want to discuss if there's been any settlement

17 negotiations thus far.  Let me ask plaintiff has a demand

18 been made yet or any discussion on that end?

19        MR. LIVINGSTON:  We have not made a formal

20 demand.  I think we relayed to the parties that we're

21 open to settlement discussions via email.  Our clients,

22 you know, understand that this project was a financial

23 failure for multiple parties.  And our position, our

24 client's position is they're EB-5 investors.  You know,

25 the reason EB-5 capital is attractive to developers and

17

Proceedings

1   senior lenders is because the financial side of it is

2   it's much cheaper capital, right?  Because the EB-5

3   investors' primary motivation is immigration status,

4   right?  And I don't mean to assume your Honor's knowledge

5   of the EB-5 program, but generally speaking I think I can

6   represent to the Court that's a true statement.

7          So our clients believe that even though they

8   agree to be subordinated originally, or at least invest

9   in the LLC such that the EOM had the power to make those

10  type of decisions originally, that they should not

11  have been fully wiped out here when other parties were

12  not fully wiped out.

13         So we are certainly open to reasonable

14  settlement negotiations and settlement offers from the

15  defendants.  We currently only represent 14 EB-5

16  investors.  I can represent to the Court and to the

17  defendants that there are other potential EB-5 investors

18  who are monitoring this case and may want to join as

19  additional plaintiffs, again subject to our right to

20  amend the complaint to add those plaintiffs.

21         This sort of thing, if we can settle,

22  oftentimes my understanding would be the type of

23  situation that we could potentially execute some sort of

24  confidentiality agreement where the terms of the

25  settlement are not broadly disseminated to the world such

18

Proceedings

1  that additional EB-5 plaintiffs involved in this project

2  would not necessarily know that these parties settle with

3  us such at X or Y amount.  Our clients are more than

4  happy, would be more than happy to discuss that option

5  with these defendants.

6          Obviously, if your Honor would like us to make

7  a formal X amount settlement demand, we are happy to do

8  that.  From what we understand from defendants, I believe

9  that there was no appetite for settlement originally but

10  they can represent their current position.

11          THE COURT:  Well again, I think in every

12  conference I hold I do want to discuss the possibility of

13  resolution particularly where the costs could be high in

14  terms of motion practice.  I realize that the numbers

15  involved in this particular case are already high.  I'm

16  not sure what, as you say, what the appetite is for

17  settlement and all so the cost may be significant but may

18  be insignificant compared to the potential settlement

19  award.

20          Notwithstanding that, I do encourage plaintiff

21  to make a reasonable demand.  I'm not going to set a

22  deadline or anything like that, but I do think it makes

23  sense to make a demand sooner rather than later just so

24  that the defendants know what's out there.  And you know,

25  frankly there may be a situation too where one of the

19

Proceedings

1  defendants is willing to negotiate or more than one and

2  we can revisit.

3          Just circling back to what I said earlier, I

4  had other cases where the parties have consented to my

5  jurisdiction where I still held the settlement conference

6  and I don't see there being a conflict there because

7  usually these are not bench trials anyway so there

8  wouldn't be that thought.  But again, if the parties are

9  concerned on that front but are otherwise amenable to

10  jurisdiction, you know, I can, and I've done this for

11  other magistrate judges, I can ask another magistrate

12  judge just to do a settlement conference.

13          But again, if for instance in the September

14  19th letter there's been a demand made and it seems like

15  the parties are actually closer than they may think or

16  there's an appetite on the defendants' side to have a

17  settlement conference early, I'm happy to also schedule

18  that before we do briefing.  So I leave that to the

19  parties.

20          Okay.  Anything further then at this stage?

21          MR. LIVINGSTON:  Not from plaintiffs, your

22  Honor.

23          MR. KUSTER:  Your Honor, John Kuster for GSUIG.

24  I just want to make two brief comments.

25          Number one is I think it is our client's view,

20

Proceedings

1  and I will go back and double check, that settlement
2  would be premature before these motions are decided.
3  Quite frankly, our client views these as frivolous
4  claims.  Our client spent a lot of time, money, and
5  effort to go through a formal foreclosure process in
6  state court in Richmond County and spent lots and lots of
7  money to do that and formally go through a foreclosure
8  process where none of the plaintiffs or any other party
9  challenged those proceedings including the public auction
10  that was overseen by the court.
11          So there's no -- you know, this notion that
12  we're somehow property off of the EB-5 lenders is a quite
13  inappropriate conclusion to draw from the facts that are
14  out there.
15          So I can't see our client being willing to do
16  that at this junction, but we'll go back and ask.  But I
17  think the record has to be clear that the losses here
18  that the defendants, especially the senior lenders
19  incurred in this project, or massive.  And the notion
20  that there was any hijinks to somehow squander the money
21  from the EB-5 lender is just belied by the facts as even
22  alleged in the complaint.  As our letter makes clear,
23  look, there was a subordination agreement from the
24  original loan with my client where they subordinated
25  their interest to our $135 million commitment which

21

Proceedings

1   became $185 million.  And you know, we're out of the

2   money, 110 million, even under the original subordination

3   agreement, and they only spent 75 million.  After the

4   public auction, there can't possibly be a related cause

5   for their damages based on a subsequent subordination

6   agreement since the original subordination agreement

7   wiped them out which they're not even complaining about.

8            So I just want your Honor not to go away from

9   hearing just from the plaintiffs about the view of the

10  merits of this case because we're very confident that

11  we're going to win on this motion.  And I think your

12  Honor has to keep that in mind that the context here

13  matters for parties when they're assessing settlement.

14  So I think for us it would be useful to get the Court's

15  guidance on the meritorious nature or lack thereof of

16  these claims before we engage in settlement because I

17  think that's going to be a very important data point for

18  whichever defendants may or may not remain in the case.

19           THE COURT:  I mean that's perfectly

20  understandable.  Look, I think at this point the reason

21  why I bring up settlement is that I've been surprised

22  frankly, not in this case but in other cases, how

23  frequently plaintiffs don't make any demand until

24  considerably later in the litigation.  So I just want to

25  get that conversation started even though it may not

22

Proceedings

1  ultimately lead to a settlement conference any time soon

2  or even perhaps before the motion is decided.  But I

3  still would encourage the plaintiff to make the demand.

4          In terms of the pre-motion conference letters,

5  you know, from my perspective, again, I think these are

6  certainly non-frivolous motions.  I mean these are well

7  argued applications and I want to see the full briefing

8  on it.  So I think at this point the best bet is really

9  just to, you know, once the schedule is in place, there's

10  an amended complaint, to have a briefing schedule.

11          I would add though on the proposed schedule,

12  you know, for what it's worth, my proposed schedule would

13  typically be, you know, 30 days each side and then 14

14  days for a reply.  You know again, I realize depending on

15  the timing there may be holidays involved too, so I can,

16  you know, we can revisit.  But generally speaking I want

17  this to kind of move pretty expeditiously and then we can

18  issue an order, you know, also in an efficient manner

19  afterwards.

20          MR. KUSTER:  John Kuster for GSUIG.  Your

21  Honor, we appreciate that schedule.  I think if we're

22  going to coordinate on a brief, it's going to require a

23  little bit more logistical jujitsu on our part if you

24  will, so we may need a little bit more time to get our

25  brief in.  But we'll talk amongst ourselves and see what

23

Proceedings

1  we can do.

2          THE COURT:  Yes, okay.

3          MR. LIVINGSTON:  For the record, Matt

4  Livingston for the plaintiffs.  I think we would be

5  obviously amenable if they're going to do an omnibus

6  brief, which would help us to a degree, not having to

7  respond to four independent motions or briefs, we would

8  be amenable to giving them more time on the schedule if

9  they were going to file one brief.

10          THE COURT:  And frankly, I would as well.  I

11  mean I think if it's not going to be an omnibus brief,

12  then I would want basically briefing to be filed in early

13  October, you know, at the latest really.  But if it is an

14  omnibus brief, then you know, I would like to see some

15  more of where things stand, how many pages we're talking

16  about.  I encourage you to do fewer pages, but I

17  appreciate that there's a lot of attorneys and a lot of

18  issues involved.  So I'm obviously amenable to having an

19  oversized omnibus brief be filed.

20          Okay.  Anything further from any of the

21  parties?

22          MR. LIVINGSTON:  Not for plaintiffs.  I mean we

23  don't need to get into substance.  We obviously disagree

24  with GSUIG's argument regarding damages, but we'll get

25  into that in the briefing I suppose.

24

Proceedings

1        THE COURT:  All right.  So there's an agreement

2   to disagree.  Anything else?

3        MR. SCHMIT:  Nothing, your Honor.

4        THE COURT:  All right.  Thanks everyone.

5        ALL:  Thank you, your Honor.

6                    (Matter concluded)

7                         -oOo-

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

25

# C E R T I F I C A T E

I, MARY GRECO, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **10th** day of **October**, 2024.

*Mary Greco*

Transcriptions Plus II, Inc.